IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| RONALD CEZAIR )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JPMORGAN CHASE BANK, N.A. )<br>)<br>Defendant, )<br>)<br>FEDERAL HOME LOAN )<br>MORTGAGE CORPORATION )<br>)<br>Defendant, )<br>)<br>MCCABE, WEISBERG & CONWAY, LLC )<br>)<br>Defendant, )<br>)<br>LENDINGTREE, LLC )<br>)<br>Defendant, )<br>)<br>FIRST COMMONWEALTH MORTGAGE CORP )<br>)<br>Defendant. ) | Civil Action No. 8:13-cv-02928<br>JURY TRIAL DEMANDED<br><br>*Amended Complaint* |

## COMPLAINT

COMES NOW the Plaintiff, Ronald Cezair, (hereafter the "Plaintiff") by counsel, and for his complaint against the Defendants JPMorgan Chase Bank, N.A. ("JPMC"), Federal Home Loan Mortgage Corporation ("FHLMC" or "FreddieMac") and McCabe, Weisberg & Conway, LLC ("McCabe"), LendingTree, LLC ("LendingTree") and First Commonwealth Mortgage Corporation ('FCMC") alleges as follows:

1

**PRELIMINARY STATEMENT**

1. This is an action for actual and statutory damages, costs and attorney's fees brought pursuant to the Federal Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA"); Truth And Lending Act, 15 U.S.C. §1601 *et seq.* ("TILA"), the Real Estate Settlement Procedures Act, 12 U.S.C. §2605 *et seq.* (hereinafter "RESPA"), the Maryland Consumer Debt Collection Act, Md. Code §14-201 *et seq.* (MCDCA), the Maryland Consumer Protection Act, Md. Code §13-301 *et seq.* (MCPA) and breach of contract.

**PARTIES**

2. The plaintiff is a natural person and resident of the State of Maryland. He is a "consumer" as defined by 15 U.S.C. §1602(i).

3. Defendant JPMC is a national banking association organized under the laws of the United States. At all relevant times hereto, JPMC acted as a "loan servicer," as defined in 12 U.S.C. §2605(i)(2).

4. Defendant FreddieMac is one of the nation's biggest purchaser of mortgage loans in the secondary loan market and is a "creditor" pursuant to 15 U.S.C. §1602(g).

5. Defendant McCabe is a law firm with its principal office in Pennsylvania but also conducts business in Maryland at its office in the city of Laurel of which the principal purpose of that business is the collection of debts. Defendant McCabe regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is a "debt collector" within the meaning of the FDCPA, as defined at 15 U.S.C. §1692a(6), and a "collector" as defined by the MCDCA, Md. Code §14-201(b).

6. Defendant Lending Tree is a lender as well as a facilitator of lending. LendingTree purchased SurePoint Lending in 2010.

7. Defendant FCMC is a mortgage lender and/or broker and/or originator that is principally located in Louisville, Kentucky.

## FACTS

8. On or about March 30, 2009, Mr. Cezair obtained a mortgage refinance loan "2009 Loan") from SurePoint Lending to purchase 9615 51st Street, College Park, Maryland ("Property"). The purpose of the loan was personal or family and/or household related and therefore constitutes a "debt" as defined at 15 U.S.C. §1692a(5).

9. The proceeds from the 2009 Loan satisfied an previous loan ("2008 Loan") created on February 15, 2008. The 2008 Loan was payable to FCMC, the originator and lender of that loan.

10. The terms of the 2009 Loan was substantially different than the 2008 Loan. Specifically, the amount of the 2009 Loan was for a significantly higher amount -- $396,316.00 -- but the interest rate -- 5.00% -- was substantially lower. As a result Mr. Cezair's mortgage payment was reduced by $252.85.

11. SurePoint did not provide Mr. Cezair with a copy of all the closing documents. Mr. Cezair was particularly interested in receiving a copy of the 2009 Note but SurePoint never sent the copy as it promised. Instead, SurePoint said his servicer would send him a copy of the 2009 Note.

12. Mr. Cezair contacted JPMC to inquire about the 2009 Note. He also inquired about the new mortgage payment because JPMC was still requesting mortgage payments as stipulated in the 2008 Loan.

13. JPMC was unresponsive to Mr. Cezair's requests and ignored his requests for the 2009 Note.

14. After a year or so of JPMC refusing to send the copy of the 2009 Note and making the inflated mortgage payments, Mr. Cezair determined JPMC was not in possession of the 2009 Note and not entitled to receive his payments.

15. Upon Mr. Cezair satisfaction of the 2008 Loan FCMC had an obligation to release the deed of trust securing the 2008. FCMC was further obligated to mark the Note evidencing the 2008 Loan as paid and to return the 2008 Note to Mr. Cezair.

16. Thereafter, JPMC misguidedly claimed Mr. Cezair was delinquent and began soliciting him to apply for a modification.

17. For a period of about 2 years Mr. Cezair applied over and over for a modification but was denied each and every time.

18. In May 2012 Mr. Cezair wrote to JPMC to advise it that he had a purchaser for the Property and that he needed information from JPMC to consummate the sale. Specifically, he requested a payoff statement, a payment history and a copy of the Note.

19. JPMC sent a letter dated May 18, 2012 that stated it was looking into Mr. Cezair's inquiry and that a response was forthcoming.

20. Defendant McCabe sent correspondence to Mr. Cezair on or about June 7, 2012 where McCabe threatened the property would be foreclosed on if Mr. Cezair did not payoff or reinstate the mortgage loan.

21. The McCabe letter did not provide a copy of the Note nor did it provide a history of loan payments nor did it provide an explanation for omission of the requested information.

22. Defendant JPMC issued a Notice of Intent to Foreclose for Mr. Cezair on June 20, 2012.

23. Mr. Cezair responded by letter dated July 2, 2012 in which he complained about JPMC failure to respond to his May 2, 2012 letter and requested that JPMC provide the requested information within 10 days. He concluded by asking JPMC to rescind the foreclosure notice.

24. After receiving no response Mr. Cezair wrote another letter that was dated September 25, 2012 where he complained about JPMC failure to provide the requested documents and caused him to lose his contract to sell the Property. He concluded with a request for the identity of the owner of the loan and another request for a copy of the Note.

25. JPMC ignored Cezair's request just as it ignored his previous requests. At that point Mr. Cezair gave up on trying to obtain the documentation and just decided to wait.

26. After nearly a year Mr. Cezair grew weary of waiting and wrote JPMC on August 1, 2013 to again request the identity of the owner of the loan and request a current copy of the Note.

27. In correspondence dated August 12, 2013 JPMC included a purported copy of the Note. And in correspondence dated August 19, 2013 JPMC provided a loan payment history.

28. The Defendant McCabe sent a letter dated August 16, 2013 in which it claimed "A FORECLOSURE SALE OF THE PROPERTY MAY OCCUR AT ANY TIME AFTER 45 DAYS FROM THE DATE OF TIS NOTICE."

29. On or about August 28, 2013 Mr. Cezair was served with the foreclosure Order to Docket.

30. Maryland Code and Rules regarding foreclosure allow a foreclosure sale to occur 45 days from serving the foreclosure Order to Docket.

31. Under Maryland law a foreclosure sale the earliest date a foreclosure sale could occur is October 14, 2013.

32. No foreclosure sale could occur on September 30, 2013 or 45 days from August 16, 2013.

33. The foreclosure Order to Docket identified FHMLC as the owner or secured creditor of the mortgage loan.

34. FHMLC never provided Mr. Cezair with any notice that it was the owner of his loan.

35. The foreclosure Order to Docket included a purported copy of the Note that was endorsed to JPMC.

### COUNT ONE: VIOLATIONS OF TILA
### 15 U.S.C. §§1641(f),(g)

36. Plaintiff realleges and incorporates paragraphs 1 through 35 above as if fully set out herein.

34. Defendant JPMC claims FHMLC is the owner of the loan.

35. Tim Owens, Vice President of MERS, filed an Assignment of Deed of Trust assigning interest from FCMC to JPMC.

36. JPMC did not provide Plaintiff with notice of the assignment.

37. Defendant JPMC and/or FHMLC violated TILA, 15 U.S.C. §1641(g)(1) by failing to notify Plaintiff that ownership of the loan had been transferred.

38. Defendants also violated TILA, 15 U.S.C. §1641(f)(2) by failing to provide the identity of the investor upon Plaintiff's written requests.

39. As a result of the aforesaid violations of TILA, both Defendants are liable to Plaintiff for:

a.   Actual damages in an amount to be determined at trial pursuant to 15 U.S.C. §1640(a)(1);

b.   Additional statutory damages in the amount of $400.00 to $4,000 pursuant to 15 U.S.C. §1640(a)(2)(A)(iv); and

c.   Reasonable attorneys' fees and the costs of litigation pursuant to 15 U.S.C. §1640(a)(3).

### COUNT TWO: VIOLATIONS OF RESPA
### 12 U.S.C. §2605(e)

40.   Plaintiff realleges and incorporates paragraphs 1 through 39 above as if fully set out herein.

41.   Plaintiff submitted letters that constitute "qualified written requests" under 12 U.S.C. §2605(e)(1)(B). Plaintiff's letters were written correspondence other than notice on a payment coupon or other payment medium supplied by Defendant JPMC and contained Plaintiff's name, account number, and statements of reasons for belief of Plaintiff that the account was in error or requests for information. Plaintiff's letters were related to "servicing" as that term is defined under 12 U.S.C. §2605(i)(3), in that each letter pertained to Defendant JPMC's servicing of the Note.

42.   Defendant JPMC violated 12 U.S.C. §2605(e) on multiple occasions by failing to make appropriate corrections to Plaintiff's account after receiving Plaintiff's "qualified written requests."

43.   Defendant JPMC violated 12 U.S.C. §2605e(2) by failing to take appropriate action within 60 days of receiving Plaintiff's "qualified written requests."

44.   Defendant JPMC violated 12 U.S.C. §2605e(2)(C) on multiple occasions by failing to conduct a reasonable investigation that provided the information requested by

Plaintiff or an explanation of why the information requested is unavailable or cannot be obtained by Defendant.

45. Defendant JPMC violated 12 U.S.C. §2605e(3) on several occasions by providing information to Experian, Equifax and Trans Union regarding delinquent and/or overdue payments owed by Plaintiff during the sixty (60) days that followed JPMC's receipt of Plaintiff's qualified written requests.

46. Defendant JPMC's violations were numerous and consistent, constituting a "pattern or practice" of noncompliance with the requirements of 12 U.S.C §2605 *et seq.*

47. As a result of the conduct, actions and inactions of Defendant JPMC, Plaintiff suffered actual damages consisting of pecuniary loss and emotional/mental distress.

48. Defendant's conduct was the proximate cause of Plaintiff's injuries, rendering Defendant liable for actual damages in an amount to be determined by the jury pursuant to 12 U.S.C. §2605f(1)(A), statutory damages pursuant to 12 U.S.C. §2605f(1)(B), costs and reasonable attorney's fees pursuant to 12 U.S.C. §2605f(3).

## COUNT THREE: VIOLATIONS OF FDCPA

49. Plaintiff realleges and incorporates paragraphs 1 through 50 above as if fully set out herein.

50. Defendant McCabe violated 15 U.S.C. §1692e by misrepresenting that it could foreclose 45 days after August 16, 2013.

51. Defendant McCabe presented two different copies of the Note -- one endorsed to JPMC and another not endorsed to JPMC. Each or both versions of the Note were not an accurate copy of the Note, a violation of §1692e.

52. Defendant McCabe misrepresented the amount due on the debt, a violation of §1692e. Even if JPMC is a "holder" of the Note, it was not a "holder" of the Note during the period of time Plaintiff was requesting proof JPMC was a "holder." Additionally, Plaintiff tendered payment in May 2012 and consequently Plaintiff cannot have interest assessed against him.

53. Defendant McCabe's misrepresentation has caused the Plaintiff actual damages consisting of both pecuniary expenses and emotional/mental distress.

54. Defendant McCabe's conduct was the proximate cause of Plaintiff's injuries, rendering McCabe liable for actual damages in an amount to be determined by the jury pursuant to 15 U.S.C. §1692k(a)(1), statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(A), and reasonable attorney's fees pursuant to 15 U.S.C. §1692k(a)(3).

## COUNT FOUR: VIOLATIONS OF MCDCA

55. Plaintiff realleges and incorporates paragraphs 1 through 54 as if fully set out herein.

56. Plaintiff's mortgage loan is a "consumer transaction" within the meaning of the MCDCA, §14-201(b).

57. Defendant's JPMC and FHMLC are both liable for the acts of McCabe under the theory of respondeat superior and/or vicarious liability.

58. Defendant McCabe violated the MCDCA, §14-202(8) by threatening to foreclose and/or claiming a right to foreclose on September 30, 2013 with knowledge that it had no right to foreclose on September 30, 2013.

59. Defendant McCabe's illegal threat and/or claim has caused the Plaintiff to suffer actual damages consisting of both pecuniary expenses and emotional/mental distress.

60. Under the MCDCA at §14-203 McCabe's unlawful threat and/or claim renders it liable for any damages caused by its conduct.

61. Under the doctrine of respondeat superior and/or vicarious liability Defendants JPMC and FHMLC are liable for McCabe's violation of the MCDCA at §14-203.

62. Under the MCPA at §13-408(b) the Defendants are liable for attorney's fees for its MCDCA violation pursuant to MCPA at §13-301(13)(iii).

## COUNT FIVE: BREACH OF CONTRACT

63. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

64. Defendant FCMC and Plaintiff entered into a loan agreement -- deed of trust ("2008 DOT") -- that obligated FCMC to release the deed of trust upon satisfaction of the 2008 Loan.

65. Paragraph 23 of the 2008 DOT states that upon satisfaction of the 2008 Note the Lender is to release the DOT and mark the Note paid and return the Note to Borrower.

66. Plaintiff satisfied the 2008 Loan but Defendant FCMC failed to fulfill its obligation to release the DOT.

67. Due to FCMC's failure to release the 2008 Note and DOT, JPMC has pursued Plaintiff on the 2008 Note and DOT. As a result Plaintiff has incurred charges, expenses, payments that he should not have incurred.

68. Defendant LendingTree and Plaintiff entered into a loan agreement -- deed of trust ("2009 DOT") -- that obligated LendingTree to provide Plaintiff with a copy of the 2009 Note and Deed of Trust.

69. Paragraph 17 of the 2009 DOT obligated the Lender to give Plaintiff a copy of 2009 Note and security instrument.

70. Defendant LendingTree failed to fulfill its obligation to provide Plaintiff with a copy of the 2009 Note and security instrument.

71. Due to LendingTree's failure to provide Plaintiff a copy of the 2009 Note and DOT, the Plaintiff could not stop JPMC from pursuing him on the 2008 Note and DOT. As a result Plaintiff has incurred charges, expenses, payments that he should not have incurred.

72. Defendants' contract breaches were the proximate cause of Plaintiff's damages, rendering Defendants liable for any economic and consequential damages. In the alternative, Plaintiff is entitled to nominal damages.

WHEREFORE, your Plaintiff demands judgment for actual and statutory damages against all Defendants; for his attorneys' fees and costs; for prejudgment and post-judgment interest at the legal rate, and such other relief as the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

RONALD CEZAIR

By _____
Ronald Cezair
9615 51st Avenue
College Park, MD 20740
(202) 361-1265