IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RONALD CEZAIR                       :

                                    :

      v.                        :    Civil Action No. DKC 13-2928

                                    :

JPMORGAN CHASE BANK, N.A., et al.
                                    :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this mortgage lending case are the motions to dismiss filed by Defendants Federal Home Loan Mortgage Corporation ("FHLMC") and JPMorgan Chase Bank, N.A. ("Chase") (ECF No. 14), and Defendant LendingTree, LLC (ECF No. 30), and the motion to dismiss or, in the alternative, for summary judgment filed by Defendant First Commonwealth Mortgage Corporation ("FCMC") (ECF No. 16). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motions will be denied.

I. **Background**

The following facts are set forth in the amended complaint. (ECF No. 11). On or about March 30, 2009, Plaintiff Ronald Cezair obtained a mortgage refinance loan from Defendant

LendingTree on property in College Park, Maryland ("2009 Loan").[1]
The proceeds from this loan satisfied a previous loan created on
February 15, 2008 ("2008 Loan").  His monthly payments due on
the 2009 Loan were less than the 2008 loan.  The 2008 Loan was
payable to FCMC, a lender who originated the loan.  LendingTree
did not provide Plaintiff with a copy of all the closing
documents, including a copy of the 2009 Note.  LendingTree
stated that Plaintiff's servicer - Chase - would send him a
copy.  Plaintiff contacted Chase to inquire about the 2009 Note
and the fact that it was still requesting mortgage payments on
the 2008 Loan.  Chase was unresponsive.  Plaintiff made the
higher loan payments for about a year and during this time still
did not receive a copy of the 2009 Note.  Chase claimed
Plaintiff was delinquent and began soliciting him for a
modification, which Plaintiff applied for numerous times over a
two year period without any success.

On May 2, 2012, Plaintiff wrote to Chase informing it that
he had a purchaser for the property and that he needed
information to consummate the sale, specifically: a payoff
statement; a payment history; and a copy of the note.  On May
18, 2012, Chase sent Plaintiff a letter stating that it was
looking into his inquiry.  The law firm McCabe, Weisberg, and

---

[1] The alleged wrongdoer was actually SurePoint, which was
purchased by LendingTree in 2010.  For ease of comprehension,
this opinion will refer to LendingTree exclusively.

Conway, LLC ("the Substitute Trustees") sent Plaintiff a letter on June 7, 2012, threatening to foreclose on the property if Plaintiff did not pay off or reinstate the mortgage loan.[2] This letter did not provide a copy of the note, a history of loan payments, or an explanation for omission of the requested information. Chase issued a Notice of Intent to Foreclose on June 20, 2012. Plaintiff responded on July 2, 2012, complaining about Chase's failure to respond to his May 2 letter and requesting that Chase provide the requested information within ten (10) days and rescind the foreclosure notice. Plaintiff received no response and wrote another letter to Chase on September 25, 2012, in which he complained about Chase's failure to provide the requested documents which caused him to lose the contract to sell the property. He requested to be told the identity of the owner of the loan and again requested a copy of the note. Chase again ignored these requests. Plaintiff gave up trying to get the documentation and decided to wait.

Nearly a year later, on August 1, 2013, Plaintiff restarted his attempts to learn the identity of the owner of the loan and obtain a copy of the note through a letter to Chase. Chase responded on August 12, providing a purported copy of the note.

---

[2] The law firm of the Substitute Trustees was named as a Defendant, but Plaintiff voluntarily dismissed his claims against it pursuant to Fed.R.Civ.P. 41(a)(1)(A)(i) on March 19, 2014. (ECF No. 20).

On August 19, it provided a loan payment history.  On August 16, the Substitute Trustees sent a letter which claimed that a foreclosure sale of the property may occur at any time forty-five (45) days from the date of the letter.  On or about August 28, 2013, Plaintiff was served with the foreclosure order to docket which identified FHMLC as the owner or secured creditor of the mortgage loan.  Plaintiff alleges that he was never provided any notice from FHMLC that it was the owner of the loan.  The foreclosure order to docket included a purported copy of the note that was endorsed to Chase.

On January 31, 2014, Plaintiff, proceeding *pro se*, filed an amended complaint in this court, asserting four claims.[3]  First, he claims that Chase and FHMLC violated two sections of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(f), (g), by failing to notify Plaintiff that ownership of the loan had been transferred and failing to provide the identity of the investor upon Plaintiff's written requests.  Second, he claims that Chase committed numerous violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), by failing to take appropriate action after receiving Plaintiff's requests.  Third, Plaintiff claims that Chase and FHMLC violated the

---

[3]  The complaint lists five claims, but Count Three - violations of the Fair Debt Collection Practices Act - is addressed only against law firm of the Substitute Trustees, which was subsequently dismissed.

Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201, *et seq.*, under the doctrine of *respondeat superior* for the acts of the Substitute Trustees in threatening to foreclose.  Finally, Plaintiff claims a breach of contract against FCMC for its failure to release the Deed of Trust upon satisfaction of the 2008 Loan, and against LendingTree for its failure to provide Plaintiff with a copy of the 2009 Note and Deed of Trust pursuant to its loan agreement with Plaintiff. Motions to dismiss were filed by Chase and FHLMC on February 12, 2014 (ECF No. 14); FCMC on March 4, 2014 (ECF No. 16); and LendingTree on April 24, 2014 (ECF No. 30).  In accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the clerk of court mailed a letter to Plaintiff following the filing of each motion, notifying him that a dispositive motion had been filed and that he was entitled to file opposition material or risk entry of judgment against him.  (ECF Nos. 15, 18, and 33). Plaintiff opposed each motion (ECF Nos. 17, 24, and 37), to which each Defendant replied (ECF Nos. 22, 25, and 38).

## II.  Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim

showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Finally, while courts generally should hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," they may nevertheless dismiss complaints

6

that lack a cognizable legal theory or that fail to allege sufficient facts under a cognizable legal theory. *Haines v. Kerner,* 404 U.S. 519, 520 (1972); *Turner v. Kight,* 192 F.Supp.2d 391, 398 (D.Md. 2002), *aff'd*, 121 F.App'x. 9 (4th Cir. 2005).

## III. Analysis

### A. LendingTree

Plaintiff brings one claim against LendingTree for breach of contract, specifically that LendingTree violated its obligation under paragraph 17 of the 2009 Loan agreement between it and Plaintiff to provide Plaintiff with the 2009 Note and Deed of Trust. According to the complaint, due to LendingTree's failure, Plaintiff could not stop Chase from pursuing him on the 2008 Note and Deed of Trust, which resulted in Plaintiff incurring charges, expenses, and payments he would not otherwise have incurred. (ECF No. 11 ¶¶ 68-71). In its motion to dismiss, LendingTree argues that this action is barred by the statute of limitations.

Generally, a civil action must be filed within three years of the date when the cause of action accrues. Md. Code Ann., Cts. & Jud. Proc. § 5-101. The complaint alleges that the 2009 Loan was obtained on March 30, 2009, but the complaint was not filed until October 4, 2013. In opposition, Plaintiff argues that "the deed of trust is a contract and/or instrument under seal" and is therefore subject to a twelve year statute of

limitations. *Id.* § 5-102.  In reply, LendingTree contends that Plaintiff is attempting to amend his complaint through his opposition, something that is not permitted.

The statute of limitations is an affirmative defense that should only be employed to dismiss claims pursuant to Fed.R.Civ.P. 12(b)(6) when it is clear from the face of the complaint that the claims are time barred. *See Alexander v. City of Greensboro*, 801 F.Supp.2d 429, 445 (M.D.N.C. 2011) ("[A]n affirmative defense . . . may only be reached at the [motion to dismiss] stage if the facts necessary to deciding the issue clearly appear on the face of the pleadings.").  The burden is on the party asserting the defense, here LendingTree, to plead and prove it. *See Newell v. Richards*, 323 Md. 717, 725 (1991) ("As a general rule, the party raising a statute of limitations defense has the burden of proving that the cause of action accrued prior to the statutory time limit for filing suit.").  A plaintiff is under no obligation to plead facts in a complaint to show the timeliness of his claims.

Here, while any claim with a three year statute of limitations based on the asserted contract entered into on March 30, 2009 would be barred, it is not immediately clear that any purported contract, and an action relating to it, would not be subject to the twelve year statute of limitations for specialties.  Defendant is caught somewhat in a "Catch 22"

situation. It claims that there was no contract at all, much less one under seal.[4] It is LendingTree's burden, however, to prove that any such claim is untimely and without a contract document to rely on, that task is impossible on a motion to dismiss. Rather, the issue will have to be deferred.

LendingTree also argues that Plaintiff's claim is not plausible. "A breach of contract action requires a contractual obligation in the first instance." *Davis v. Balt. Hebrew Congregation*, 985 F.Supp.2d 701, 717 (D.Md. 2013). LendingTree represents that it did not purchase any SurePoint loans as part of its purchase of the company, and therefore does not know whether SurePoint made the 2009 Loan. The evidence suggests no such loan exists, as the public records do not have any deed of trust recorded on the 2009 Loan. (*See* ECF No. 14-9 (land records search for "Ronald Cezair" as grantor/grantee, showing no reference to a deed of trust in 2009)). Furthermore, LendingTree argues that because Plaintiff never alleged that he performed under the 2009 contract, he should not be able to rely upon it as the proximate cause for the foreclosure of another, prior loan. In response, Plaintiff states that his complaint alleges that LendingTree failed to record the Deed of Trust. If it had done so, Chase would have had constructive notice of it

---

[4] Neither party has provided the 2009 Note or Deed of Trust.

and, additionally, Plaintiff would be able to retrieve a copy from the land records instead of having to rely on LendingTree.

LendingTree is criticizing Plaintiff improperly for failing to provide a copy of the 2009 Deed of Trust when it was LendingTree that allegedly breached its duty to provide a copy. As to proximate cause, Plaintiff argues that LendingTree's failure to comply with its contractual obligations to provide a copy of the 2009 Deed of Trust prevented Plaintiff from challenging Chase's alleged legal right to pursue him on the 2008 Loan. Plaintiff's arguments are plausible and LendingTree's motion to dismiss will be denied.

**B. Chase and FHMLC**

**1. Truth in Lending Act**

Plaintiff brings claims against Chase and FHMLC for violations of two provisions of the Truth in Lending Act ("TILA").[5] First, 15 U.S.C. § 1641(g) ("Notice of new creditor") provides that:

> not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including--
>
> > (A) the identity, address, telephone number of the new creditor;

---

[5] TILA became law on May 20, 2009.  P.L. 111-22, 123 Stat. 1632.

> > (B) the date of transfer;
> >
> > (C) how to reach an agent or party having authority to act on behalf of the new creditor;
> >
> > (D) the location of the place where transfer of ownership of the debt is recorded; and
> >
> > (E) any other relevant information regarding the new creditor.

Plaintiff alleges that Chase and/or FHMLC violated this provision by failing to notify him that ownership of the 2008 Loan had been transferred to FHMLC, and, additionally, that Chase failed to notify him of MERS's assignment of the Deed of Trust from First Commonwealth to Chase. Plaintiff seeks monetary damages for Defendants' alleged violations. Pursuant to 15 U.S.C. § 1640(e), any action for monetary damages under TILA can "be brought . . . within one year from the date of the occurrence of the violation."

Defendants contend that the claim as to the transfer to FHMLC is time barred. Neither the complaint nor Defendants' motion states when the transfer happened, but Defendants argue that the precise date is immaterial because even applying the equitable doctrine of fraudulent concealment to toll the statute of limitations, Plaintiff's claim is untimely.[6] Defendants point

---

[6] "[T]he fraudulent concealment doctrine tolls the statute of limitations until the plaintiff in the exercise of reasonable

to the June 20, 2012 Notice of Intent to Foreclose sent by Chase, which lists FHMLC as the secured party and provides its telephone number (ECF No. 14-13, at 5), contending that Plaintiff was on notice of the transfer in June 2012 at the latest and had until June 2013 to file his claim.  Plaintiff's original complaint, however, was filed on October 4, 2013.

The statute of limitations is an affirmative defense that ordinarily must be pleaded and proven by the party asserting it through a pleading under Fed.R.Civ.P. 8(c) and is not usually an appropriate ground for dismissal.  *See Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D.Md. 2002).  Dismissal, however, is proper "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996).  A court "may properly consider documents attached to a complaint or motion to dismiss so long as they are integral to the complaint and authentic." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) (quotation marks and citation omitted).  "To be 'integral,' a document must be one 'that by

diligence discovered or should have discovered the alleged fraud or concealment." *Browning v. Tiger's Eye Benefits Consulting*, 313 F.App'x 656, 663 (4th Cir. 2009).  "[S]everal courts, including courts in this district, have held that the equitable doctrine of fraudulent concealment can toll the statute of limitations for monetary damages claims under TILA." *Ward v. Branch Banking & Trust Co.*, No. ELH-13-01968, 2014 WL 2707768, at *14 (D.Md. June 13, 2014) (citing cases).

12

its very existence, *and not the mere information it contains*,
gives rise to the legal rights asserted.'" *Hart v. Lew*, 973
F.Supp.2d 561, 574 (D.Md. 2013) (*quoting Chesapeake Bay Found.,
Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 622
(D.Md. 2011) (emphasis in original)).   The face of Plaintiff's
amended complaint does not reveal the date on which the transfer
happened.   Furthermore, the Notice of Intent to Foreclose, while
referenced in the amended complaint, is not integral to the
legal rights asserted.   It is merely one more instance of
communication between Plaintiff and his lenders and servicers.
It is not appropriate at this juncture to consider Defendants'
statute of limitations defense.

Plaintiff also contends that the assignment of the
Deed of Trust by MERS[7] to Chase (ECF No. 14-7) was a transfer
that required notice under TILA.   While Defendants acknowledge
that the Appointment of Substitute Trustees lists Chase as the
holder of the note (ECF No. 14-8), they contend that the
assignment to Chase was for the administrative convenience of
Chase to service the 2008 Loan, because it supported its
appointment of substitute trustees.   Defendants contend that
this fact absolves them of TILA liability, as 15 U.S.C. §
1641(f)(2) provides that:

---
[7]   MERS stands for the Mortgage Electronic Registration
Systems, Inc.

> [a] servicer of consumer obligation arising
> from a consumer credit transaction shall not
> be treated as the owner of the obligation
> for purposes of this section on the basis of
> an assignment of the obligation from the
> creditor or another assignee to the servicer
> solely for the administrative convenience of
> the servicer in servicing the obligation.

It points to the Appointment of Substitute Trustees (ECF No. 14-8), and the Ownership Affidavit (ECF No. 14-20), that swears that Chase is the servicer of the loan and that FHLMC is the owner.

This argument will be rejected. While the Ownership Affidavit may be considered as it is part of the foreclosure order to docket that Plaintiff explicitly relies upon in asserting his legal rights, the Assignment of Deed of Trust states that it assigns and transfers unto Chase "all [FCMC's] right, title and interest in and to a certain [2008 Deed of Trust]." (ECF No. 14-7). This suggests that Chase was the owner of the Deed of Trust. Plaintiff's allegations, along with the documents properly before the court presently, have pled sufficiently a TILA violation.

Plaintiff also alleges violation of 15 U.S.C. § 1641(f)(2), which requires a servicer, upon written request by the obligor, to provide "to the best knowledge of the servicer, [] the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." Plaintiff's complaint

alleges that he wrote letters on September 25, 2012 and August 1, 2013 to Chase requesting the identity of the owner of the loan. (ECF No. 11 ¶¶ 24 and 26). In the motion to dismiss, Defendants argue that at the time of the September 2012 letter, Plaintiff was well aware of the owner of the loan based on the above referenced June 2012 notice of intent to foreclose. But as discussed above, that document is not appropriately considered at this time. As to the August 2013 letter, Defendants refer to Plaintiff's admission that he received the foreclosure order to docket on August 28, 2013 and that that order identified FHMLC as the owner or secured creditor of the mortgage (*Id.* ¶¶ 29 and 34). Defendants provide the Ownership Affidavit, which was part of the foreclosure action, which states that FHLMC is the owner of the loan. (ECF No. 14-20). But as Plaintiff correctly points out, at a minimum, this affidavit does not list FHLMC's address or phone number as required to be provided by the servicer, if known. Plaintiff has stated a claim for violations of Section 1641(f)(2) of TILA.

**2.   Real Estate Settlement Procedures Act**

Plaintiff asserts that Chase violated RESPA, 12 U.S.C. § 2605(e), by failing to respond to four letters sent by Plaintiff in May, July, and September 2012, and in August 2013.

12 U.S.C. § 2605(e) states that:

15

>       [i]f any servicer of a federally related
>       mortgage loan receives a qualified written
>       request from the borrower . . . for
>       information relating to the servicing of
>       such loan, the servicer shall provide a
>       written response acknowledging receipt of
>       the correspondence within 20 days (excluding
>       legal public holidays, Saturdays, and
>       Sundays).[8]

A qualified written request ("QWR") is defined as:

---

[8] The Dodd-Frank Wall Street Reform and Consumer Protection Act amended RESPA to reduce the time period to acknowledge receipt from twenty (20) days to five (5) days. It also reduced the time a servicer had to respond from sixty (60) days to thirty (30) days, with an additional fifteen (15) day extension if, before the end of the thirty day period, the servicer notifies the borrower of the extension and the reasons for delay in responding. Pub. L. 111-203 § 1463(c)(2), (3), 124 Stat. 1376, 2184 (2010). These new time periods went into effect on January 10, 2014, when the implementing regulations took effect. 12 C.F.R. § 1024, *et seq.*; Pub. L. 111-203 § 1400(c)(2), 124 Stat. 1376, 2136 (law shall take effect on the date on which the final regulations implementing such section take effect; regulations shall take effect twelve months after their issuance). The last alleged QWR is dated August 1, 2013, before the new time limits became effective.

Defendants submit that these amendments became effective in January 2013. That is not a correct reading of the law, which states that provisions of the law will take effect on the date on which the final regulations implementing such provision take effect. § 1400(c)(2). Where regulations "have not been issued on the date that is 18 months after the designated transfer date shall take effect on such date." § 1400(c)(3). The designated transfer date was July 21, 2011. 75 Fed.Reg. 57252-02 (Sept. 20, 2010). The regulations implementing these provisions were issued on January 17, 2013, within 18 months of the designated transfer date. 78 Fed.Reg. 10696, 10899. Therefore, the provisions became effective upon the regulations effective date: January 10, 2014. *See Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181 n.3 (2d Cir. 2014) ("As of January 10, 2014, servicers have five days to acknowledge receipt and thirty days to respond, subject to limited extensions."); *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1145 n.3 (10th Cir. 2013) (same).

A written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that -

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). Within sixty (60) days from receipt of the QWR (excluding Saturdays, Sundays, and holidays), the loan servicer shall:

after conducting an investigation, provide the borrower with a written explanation or clarification that includes -

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2)(C). Plaintiff alleges that Chase violated this provision on numerous occasions by failing to conduct a reasonable investigation that provided the information requested by Plaintiff or an explanation of why the information requested was unavailable or cannot be obtained by Chase.

17

Plaintiff also alleges that Chase violated RESPA on several occasions by providing information to Experian, Equifax, and Trans Union in violation of 12 U.S.C. § 2605(e)(3), which states that for a sixty-day (60) period beginning upon receipt of the borrower's QWR relating to a dispute regarding payments, "a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency." Finally, Plaintiff alleges that all of these RESPA violations constituted a pattern or practice of noncompliance.  A servicer who violates these provisions is liable to an individual for actual damages "as a result of the failure [to comply]," as well as statutory damages not to exceed $2,000 in the case of a "pattern or practice of noncompliance."  12 U.S.C. § 2605(f)(1).

Chase acknowledges that the request in the May 2, 2012 letter for a payoff statement and payment history could qualify as a QWR, but argues that Plaintiff has not pled any damages that he suffered as a result of Chase's alleged failure to produce timely the payment history.  The June 2012 response from the Substitute Trustees indicates that as of June 7, 2012, Plaintiff's mortgage payment for May 1, 2010 had not been paid.  Plaintiff also admitted that he had stopped making payments.  (ECF No. 11 ¶ 14).  Chase contends that Plaintiff was well aware that he had last made a mortgage payment in May 2010, and that

by June 2012, he was over two years delinquent.  Furthermore, Chase asserts that Plaintiff has not pled facts in support of his contention that Chase engaged in a pattern or practice of noncompliance.

These arguments are unconvincing.  As Plaintiff points out, the complaint alleged pecuniary losses (ECF No. 11 ¶ 47), which he clarifies in his opposition includes costs associated with mailing letters and costs such as interest, fees, and other charges accruing as a result of Chase obstructing Plaintiff's sale of the property.  Such losses can constitute recoverable damages, at the very least for time and effort expended reengaging the servicer *after* it fails to respond to a QWR.  *See McCray v. Fed. Home Loan Mortg. Corp.*, No. GLR-13-1518, 2014 WL 293535, at *14 (D.Md. Jan. 24, 2014) (allegations that plaintiff accrued expenses in her attempts to receive responses to her QWRs, including sending certified mail, traveling to and from the post office, and copying documents and research information is sufficient (*citing Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F.Supp.2d 1156, 1164 (M.D.Ala. 1999)); *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 721 (6th Cir. 2013) (remanding to the district court to consider plaintiff's argument that costs incurred in preparing her QWR were actual damages when servicer ignored its statutory duties to respond adequately); *Johnstone v. Bank of Am., N.A.*, 173 F.Supp.2d 809, 816 (N.D.Ill. 2001) (noting that

time spent on corresponding with servicer could be compensable (*citing Cortez v. Keystone Bank*, No. 98-2457, 2000 WL 536666 (E.D.Pa. May. 2, 2000)); *Steele v. Quantum Servicing Corp.*, No. 3:12-CV-2897-L, 2013 WL 3196544, at *8 (N.D.Tex. June 25, 2013) (explaining that only damages incurred *after* the alleged RESPA violation are recoverable; costs incurred in sending an initial QWR are not recoverable because they would have incurred regardless of whether the servicer complied with RESPA).[9]

Chase also takes issue with Plaintiff's July 2, 2012 letter, "in which he complained about [Chase's] failure to respond to his May 2, 2012 letter and requested that [Chase] provide the requested information within 10 days." (ECF No. 11 ¶ 23). Chase argues that this letter cannot be a QWR because it was received prior to the expiration of its 60 day deadline to respond to the May 2, 2012 letter, and did not make an additional demand for information, nor did it report any error that needed to be corrected. These arguments are not convincing. Nothing on the face of RESPA prevents a borrower from inundating his servicer with QWRs, even where the period to

_____

[9] Because Plaintiff has pled sufficiently some actual damages, it is unnecessary at this juncture to analyze whether emotional damages are recoverable under RESPA and, additionally, whether Plaintiff incurred damages by losing the opportunity to sell his property. *See Hutchinson v. Del. Sav. Bank FSB*, 410 F.Supp.2d 374, 383 n.14 (D.N.J. 2006) (declining to decide on a motion to dismiss whether plaintiffs may recover damages for emotional distress where they have stated a claim under RESPA independent of their allegations of emotional distress).

respond has not passed.   In such a situation, presumably the
servicer could satisfy the multiple requests in one response.

In the September 25, 2012 letter, Plaintiff "complained
about [Chase's] failure to provide the requested documents
[which he alleges] caused him to lose his contract to sell the
property.   He concluded with a request for the identity of the
owner of the loan and another request for a copy of the Note."
(ECF No. 11 ¶ 24).[10]   Plaintiff attaches a copy of the letter to
his opposition which paints a different picture.   He first notes
that he previously requested a payoff statement and history of
loan payments, but the letter concludes by requesting
"documentation revealing the identity of the owner of the loan."
(ECF No. 17-3).   Plaintiff also specified in his letter that
"[i]ncluded in the documents should be a complete and current
copy of the note establishing the current owner.   The copy of
the note should be a direct copy from the actual (original) note
that was copied on or after September 25, 2012."  (*Id.*).   This
is not a QWR.   *See Willis v. Bank of Am. Corp.*, No. ELH-13-
02615, 2014 WL 3829520, at *31 (D.Md. Aug. 1, 2014) (noting that
a letter asking for a copy of the deed of trust and note, among

---

[10]   The Dodd-Frank Act added a requirement that servicers
respond to borrower's request for the identity and contact
information of the loan's owner or assignee within ten (10)
business days.   Pub L. 111-203 § 1463(a), 124 Stat. 1376, 2182
(codified at 12 U.S.C. § 2605(k)(1)(D)).   As with the amendments
described above, this requirement became effective January 10,
2014.

other documents "is not the type of information RESPA contemplates." (*quoting Junod v. Dream House Mortg. Co.*, No. 11-7035-ODW, 2012 WL 94355, at *3-4 (C.D.Cal. Jan. 5, 2012) (explaining that copies of the promissory note, deed of trust, and "a complete life of loan transactional history" are "not the type of information RESPA contemplates"))); *Bravo v. MERSCORP, Inc.*, No. 12-CV-884 (ENVV) (LB), 2013 WL 1652325, at *3 (E.D.N.Y. Apr. 16, 2013) (finding a "correspondence falls short of the statutory definition of a QWR" where it merely seeks documents to verify the loan); *Ward v. Sec. Atl. Morg. Elec. Reg. Sys., Inc.*, 858 F.Supp.2d 561, 574-75 (E.D.N.C. 2012) (finding that plaintiff's letter was not a QWR where the letter sought "*inter alia* copies of loan documents, assignments of the deed of trust and promissory note and copies of property inspection reports and appraisals and a loan transactional history"). Similarly, Plaintiff's August 1, 2013 letter "request[ed] the identity of the owner of the loan and request[ed] a current copy of the Note." (ECF No. 11 ¶ 26). This is not a QWR, and the requirement that servicers provide the identity of the owner of the loan when requested is not applicable as this letter was sent before January 10, 2014. *See Steele*, 2013 WL 3196544, at *6 ("The Dodd-Frank amendments . . . are not effective until January 10, 2014."). In sum, while some of Plaintiff's alleged communications do not constitutes a QWR,

some do and Plaintiff has pled sufficiently that Chase failed to respond and that Plaintiff suffered damages as a result.   His RESPA claim will not be dismissed.

Plaintiff's complaint also alleged that Chase violated 12 U.S.C. § 2605(e)(3) on several occasions by providing information to Experian, Equifax, and Trans Union regarding delinquent and/or overdue payments owed by Plaintiff during the sixty day period following Chase's receipt of Plaintiff's QWRs. (ECF No. 11 ¶ 45).   Chase argues that Section 2605(e)(3) only prohibits servicers from reporting to credit reporting agencies when the borrower has sent a QWR "relating to a dispute regarding the borrower's payments."   Here, the complaint does not allege that Plaintiff used any of his QWRs to call attention to an error in his account; instead, he was simply requesting information.   In his opposition, Plaintiff does not discuss this claim.   Therefore, the claim has been abandoned.   *See Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777 (D.Md. 2010) ("By her failure to respond to [defendant's] argument" in a motion to dismiss, "the plaintiff abandons her claim.").[11]

---

[11] The parties also dispute whether Plaintiff's complaint sufficiently pled a "pattern or practice of misconduct" such that he is entitled to statutory damages.   Because Plaintiff has pled sufficiently actual damages, the court declines to consider this question presently.

### 3.  Maryland Consumer Debt Collection Act

Plaintiff claims that the Substitute Trustees violated Md. Code Ann., Com. Law § 14-202(8), which provides that a debt collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist," when it threatened to foreclose and/or claimed a right to foreclose on September 30, 2013 with knowledge that it had no right to foreclose. A debt collector who violates this provision is "liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish." *Id.* § 14-203. Plaintiff brings this claim against Chase and FHMLC for the actions of the Substitute Trustees under the theory of *respondeat superior* and/or vicarious liability.

To plead a claim under the MCDCA, Plaintiff must set forth factual allegations tending to establish two elements: (1) that Defendants did not possess the right to collect the amount of debt sought; and (2) that Defendants attempted to collect the debt knowing that they lacked the right to do so. *See Lewis v. McCabe, Weisberg & Conway, LLC*, No. DKC 13-1561, 2014 WL 3845833, at *6 (D.Md. Aug. 4, 2014). The key to prevailing on a claim under the MCDCA is to demonstrate that the defendants "acted with knowledge as to the *invalidity* of the debt." *Stewart v. Bierman*, 859 F.Supp.2d 754, 769 (D.Md. 2012) (emphasis in original).

The complaint states that the Substitute Trustees sent Plaintiff the Notice to Occupants dated August 16, 2013.  This notice stated that a foreclosure sale "may" occur at any time after forty-five days from the date of the notice.  According to Plaintiff, the Substitute Trustees were, in essence, threatening foreclosure at any time after September 30, 2013, or forty-five days after August 16.  Maryland law states that a foreclosure sale of residential property may not occur until at least forty-five days after service of process of the foreclosure order to docket.  Md. Code Ann., Real Prop. § 7-105.1(n).  The foreclosure order to docket, however, was not served on Plaintiff until August 28, 2013, twelve days after the notice.  According to Plaintiff, the Substitute Trustees were threatening to sell his property through foreclosure as early as September 30, 2013, when they had no right to do so until October 14, 2013 at the earliest (October 12 was a Saturday).  For this violation, Plaintiff suffered "actual damages consisting of both pecuniary expenses and emotional/mental distress."  (ECF No. 11 ¶ 59).

Defendants argue that they were simply following Maryland law by sending the notice to occupants earlier than the foreclosure order to docket.  They point to Md. Code Ann., Real Prop. § 7-105.9, which requires the person authorized to make a sale in a foreclosure action to send, "at the same time as the

notice required under § 7-105.1(h)(2) of this subtitle, a written notice addressed to 'all occupants' at the address of the residential property." The subsection goes on to spell out the form the notice should take, including that "[a] foreclosure sale of the property may occur at any time after 45 days from the date of this notice." Section 7-105.1(h)(2) refers to *service* of documents on the mortgagor or grantor required in paragraph (1), which are a copy of the order to docket or complaint to foreclose on residential property. Thus, it appears that when *service* of the foreclosure order to docket is made, the notice to occupants should be made simultaneously, and not when the foreclosure order to docket is *filed* in the Circuit Court, which would occur before service.

Defendants next argue that the notice to occupants only stated that a foreclosure sale "*may* occur at any time *after* 45 days from the date of this notice." Such language is not in the definite to constitute a threat. But generally, when one says something may happen, they are intimating that there is a greater than zero chance of it occurring. If such a statement is made before the legal right to do so exists, it can constitute a threat to act that is made with knowledge of the threat's illegality. Defendants next argue that Section 14-202(8) requires an alleged wrongdoer not to have the right to collect the debt. Because the complaint and exhibits

demonstrate that the 2008 Loan was in default, Defendants argue that they had every right to foreclose under Maryland foreclosure law and procedures. But Defendants confuse the validity of a debt, and the methods one takes to collect that debt. "Section 14-202(8) only makes grammatical sense if the underlying debt, expressly defined to include an alleged debt, is assumed to exist, and the specific prohibitions are interpreted as proscribing certain *methods* of debt collection rather than the debt itself." *Fontell v. Hassett*, 870 F.Supp.2d 395, 405 (D.Md. 2012) (emphasis in original); *see also Richardson v. Rosenberg & Assocs. LLC*, No. WDQ-13-0822, 2014 WL 823655, at *9 (D.Md. Feb. 27, 2014) ("[I]f a collection agency attempted to collect a debt with knowledge that it was not licensed, it would be liable for damages under the MCDCA."). For purposes of Section 14-202(8), whether the 2008 Loan was in default is beside the point; even assuming the loan was in default, if the debt collector went about collecting the debt in the wrong way, it violates the law. Here, Plaintiff alleges that Defendants - through the Substitute Trustees - threatened to collect his debt through foreclosure before they had the legal right to do so.

Finally, Defendants argue that Plaintiff has not pled with sufficient particularity the damages he allegedly suffered. In his opposition, Plaintiff states that he suffered emotional

27

distress fearing a foreclosure of the property between October 1 and October 13, when Defendants had no right to foreclose. Plaintiff's allegations of Defendants' violation of the MCDCA are sufficient to survive a motion to dismiss. *See Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC 11-3758, 2013 WL 247549, at *12 (D.Md. Jan. 22, 2013) (noting that emotional distress in the form of anxiety and insomnia is sufficient); *Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, at *10 (D.Md. Aug. 4, 2011) (finding that plaintiff's allegations of "damage to [her] credit score [and] emotional damages" sufficient to allege "an actual injury or loss as a result of a prohibited practice under the [Maryland Consumer Protection Act]").

### C.   First Commonwealth Mortgage Corporation

Plaintiff brings a breach of contract claim against FCMC, alleging that the 2008 Deed of Trust obligated FCMC to release it upon satisfaction of the 2008 Loan. Plaintiff alleges that he satisfied the 2008 Loan but FCMC failed to fulfill its obligation to release the Deed of Trust. Because of FCMC's failure, Chase has pursued Plaintiff on the 2008 Note and Deed of Trust, which has resulted in charges, expenses, and payments that would not otherwise have been incurred. FCMC argues that Plaintiff has failed to satisfy a contractual condition

precedent to suit, specifically Section 20 of the 2008 Deed of
Trust:

> Neither Borrower nor Lender may commence,
> join, or be joined to any judicial action .
> . . until such Borrower or Lender has
> notified the other party (with such notice
> given in compliance with the requirements of
> Section 15) of such alleged breach and
> afforded the other party hereto a reasonable
> period after the giving of such notice to
> take corrective action.

(ECF No. 16-3, at 10). FCMC contends that Plaintiff's complaint
fails to allege that Plaintiff gave notice as required.

"To state a *prima facie* claim for breach of contract under
Maryland law, a plaintiff must allege that a contractual
obligation exists and that the defendant has breached that
obligation." *McCray v. Specialized Loan Servicing*, No. RDB-12-
02200, 2013 WL 1316341, at *2 (D.Md. Mar. 28, 2013). FCMC's
arguments concerning conditions precedent is a defense and is
not appropriate at the motion to dismiss stage, a fact further
illustrated by the dueling affidavits concerning who said what
on which dates. *See Nat'l Labor Coll., Inc. v. Hillier Grp.
Architecture N.J., Inc.*, No. DKC 09-1954, 2012 WL 3264959, at
*5-6 (D.Md. Aug. 9, 2012) (Fed.R.Civ.P. 9(c) does not require
that performance of conditions be pled -- "if [defendant] wishes
to raise failure to satisfy a condition precedent as an
affirmative defense, it is free to do so in a subsequent
pleading and/or motion.").

29

FCMC moved, in the alternative, for summary judgment.  It argues that "FCMC transferred all its right, title, and interest to the 2008 Loan, including all servicing rights and obligations, to Chase sometime between the origination of the loan on February 15, 2008 and the first payment due-date, April 1, 2008."  (ECF No. 16-2, at 5 (*citing* No. 16-4 ¶¶ 5-6)).  Furthermore, it contends that Plaintiff was aware that servicing of the loan was transferred to Chase contemporaneously with closing in February 2008, pointing to evidence it provides indicating that Plaintiff made payments to Chase starting in 2008.  (*See* ECF No. 14-16 (Chase's response to Plaintiff's August 2013 request, documenting payments to Chase in 2008)).  Plaintiff's complaint states that he contacted Chase to inquire "about the new mortgage payment because [Chase] was still requesting mortgage payments as stipulated in the 2008 Loan."  (ECF No. 11 ¶ 12).  Furthermore, a May 5, 2008 letter sent by Plaintiff to Chase requested that Chase cease charging him Private Mortgage Insurance on his loan, where he refers to FCMC as his "initial lender."  (ECF No. 14-11).  FCMC also provides the February 15, 2008 notice of assignment, signed by Plaintiff, which indicates that servicing of the loan is being assigned, sold or transferred from FCMC to Chase effective April 1, 2008.  (ECF No. 16-5).  FCMC argues that if Plaintiff satisfied the 2008 Loan, it would have been Chase, as holder and servicer of

the loan, not FCMC, that would have been obligated to record a certificate of satisfaction.

In response, Plaintiff requests an opportunity to conduct discovery on the issue prior to the court ruling on the summary judgment motion. Plaintiff submits a Rule 56(d) affidavit declaring that he "need[s] an opportunity to conduct discovery to determine whether [FCMC] transferred its ownership of the loan prior to March 30, 2009." (ECF No. 24-1 ¶ 5). He contends that his discovery request will determine whether FCMC had an obligation on March 30, 2009 to release the Deed of Trust, and FCMC has never sent him any documentation or information stating that it transferred ownership of the loan, and he has no such documentation in his possession. (*Id.* ¶¶ 6-8).

Ordinarily, summary judgment is inappropriate if "the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Rule 56(d) allows the court to deny a motion for summary judgment or delay ruling on the motion until discovery has occurred if the "nonmovant shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition." Notably, requests under Rule 56(d) "cannot simply demand discovery for the sake of discovery." *Hamilton v. Mayor & City Council of Balt.*, 807 F.Supp.2d 331, 342 (D.Md. 2011). Courts interpreting Rule 56(d)

31

have consistently held that a nonmovant's request may be denied if "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) (internal quotation marks omitted).   Put simply, Rule 56(d) does not authorize "fishing expedition[s]." *Morrow v. Farrell*, 187 F.Supp.2d 548, 551 (D.Md. 2002), *aff'd*, 50 F.App'x 179 (4th Cir. 2002).

FCMC argues that Plaintiff is seeking nothing more than a fishing expedition.   It has searched its records and declared that the 2008 Loan was assigned prior to April 1, 2008 and Plaintiff has offered no evidence to the contrary, or how he intends to prove or disprove FCMC's representations through discovery.   FCMC's motion will be denied.   Plaintiff's breach of contract claim is fairly simple: he and FCMC entered into a contract for a loan - the Deed of Trust - that once Plaintiff satisfied, obligated FCMC to release the Deed of Trust.   FCMC breached that contractual obligation by failing to release the Deed of Trust once Plaintiff satisfied the loan.   FCMC contends that it transferred its obligations to Chase shortly after originating the loan and, therefore, if Plaintiff satisfied the loan, it would be Chase that was responsible for releasing it. There is no evidence in the record that FCMC transferred its ownership rights, only that it transferred its servicing rights.

FCMC's CEO states that ownership of the loan was sold to Chase sometime between February 15, 2008 and April 1, 2008.  It is premature to rely on the sworn declaration of the moving party when the nonmovant states that he never received any such documentation.  FCMC's motion for summary judgment will be denied.

**IV.  Conclusion**

For the foregoing reasons, the motions to dismiss or, in the alternative, for summary judgment will be denied.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
